Cannon Shanmugam of Williams & Connolly for the Appellant Monarch Beverage Company. May it please the Court, this case concerns the constitutionality, under the Equal Protection Clause, of provisions of the Indiana Alcoholic Beverages Law that prohibit any wholesaler that distributes beer from also distributing liquor. Although every state employs some form of the three-tier system for the distribution of alcohol, the challenged provisions are unique to the state of Indiana. Now under Equal Protection Review, under the Rational Basis Standard, that standard is of course- Counsel, I must say I don't understand who's being treated differently from somebody else. It looks to me like any person can get two of the three licenses but not all three. So what's the distinction? One can't simply assume that the distinction is beer distributors. The rule is no one can have all three. So every single person is under that same rule. So it certainly is true that ex ante, any person has a choice to become a beer wholesaler or a liquor wholesaler. And it is also true, Judge Easterbrook, that there are reciprocal prohibitions. So liquor wholesalers are disabled from distributing beer. But the mere fact that the disability that is being challenged is the result of a choice does not take this outside the ambit of the Equal Protection Clause. Well, let me tell you the reason I ask this question. Your argument seems to me to be a substantive due process argument, not an equal protection argument. You're arguing that this statute is so outré a state can't have it. But a substantive due process argument works, the Supreme Court says, if and only if a fundamental right is involved. And there's no claim of fundamental right here. It looks like, to me, what's happening is that a substantive due process argument is being transmuted, being briefed as equal protection, in order to avoid Washington against Glucksburg and the fundamental interest standard. So maybe you want to address that. Sure, Judge Easterbrook. So we are challenging disparate treatment here. And to be sure, it is disparate treatment that is the result of a choice. In other words, anyone has the choice to become a beer wholesaler. And a consequence of that, under Indiana law, is that beer wholesalers, unlike anyone else who is eligible. That's why this looks like a substantive due process argument. No, I don't think that that's true, with respect, Judge Easterbrook. And that's simply because we are claiming that beer wholesalers are facially classified. They are treated differently from any other person who is eligible to become a liquor wholesaler. And this matters not only for purposes of whether we can get in the door, but also for purposes of the relevant legal standard. Because while it is certainly true that we would be operating under a rational basis standard, under either the equal protection clause or under the due process clause, our claim here is one of disparate treatment. And this becomes relevant. But no person is treated differently, right? Any person can have two but not all three licenses. It seems to me very difficult to say, well, I chose to do X, and now my own choice means I'm being discriminated against. I think that this is no different from— That's just a substantive due process argument. I think this is no different from at least two cases. The first is the Supreme Court's decision in Vance v. Bradley, where you have a choice to become a civil servant or a foreign servant. And the consequence of that choice is being subject to differential rules regarding retirement. I think this is no different from the case that this Court recently heard concerning another provision of Indiana law, the Indiana Petroleum Marketers case, where the consequence of choosing to be a regular beer dealer rather than a packaged liquor store is that you're unable to sell cold beer. And in that case, this Court did not erect some sort of threshold barrier to equal protection review. Instead, in those cases, the Supreme Court and then this Court analyzed the merits under the Rational Basis Clause, and critically, Judge Easterbrook, for purposes of differentiating this from a substantive due process claim. Our claim here is that the disparate treatment, the treatment of beer wholesalers and the singling out of beer wholesalers, is not rationally related to any of the bevy of interest that the state has offered in the district court or the somewhat different interests that the state is offering before this Court. So this is quite different from, say, a situation in which Indiana said, we're not going to allow any private entities to wholesale liquor at all. We're going to become a control state. And someone like, say, our client came in and said, you know what, we have a fundamental right. Do you think this is more or less rational than the limit on vertical integration in Exxon against the governor of Maryland? Well, this is very different because this is a limit. It's certainly very different, but it's certainly no less rational. They're probably equally stupid. It is less rational, and we would submit sufficiently stupid to fail the standard of rational basis review. And that's for the simple reason that, you know, this is a prohibition on horizontal integration. And the reason why that matters is that, you know, if there's any rationale that occupies more space than any other in the state's brief, it's reliance on the concerns about the Tide House, concerns that undoubtedly animated the establishment of the three-tier system across the nation in the first place. But that was a concern about vertical integration. That was a concern about the prospect of producers controlling taverns and having these out-of-state producers with no interest in the effects on the locality controlling the sale of alcohol. What we're dealing with here is a prohibition against horizontal integration on one tier of the three-tier system and a peculiar type of integration. What the state of Indiana is doing is basically saying we're going to take one class of persons outside the class of persons who are eligible to distribute liquor. Right. Indiana seems to have a particular interest in beer and how it's distributed and sold because the universe of regulations on beer distribution and retailing differ from those of other alcoholic beverages. And that, it seems to me, is the statutory classification that's at issue here. Persons who hold beer distribution licenses are uniquely burdened and that's the challenge or as I understand it, that is the challenge. Yes, that is absolutely the challenge, Judge Sykes. And I think what makes this different from the Indiana Petroleum Marketers case is that there you had differential treatment with regard to beer, the prohibition on the sale of cold beer and limiting that to a particular sector of retailers. But that obviously served temperance-related purposes because it was a retail restriction. Here we're dealing with a wholesale restriction and so to the extent that the other major category of rationales that the state offers are these temperance-related rationales. Those rationales simply don't work here because we're dealing with a restriction not on retailers but on wholesalers who obviously don't sell directly to consumers. And to the extent that the state attempted to offer the rationale below that this was essentially all about maintaining higher prices and thereby somehow reducing consumption, it was belied by the state's own concession in the district court that eliminating this prohibition would have little effect on prices. And it simply doesn't work even as the sort of hypothetical conceivable rationale that ordinarily is taken into account in rational basis review simply because it sort of rests on this assumption that the legislature somehow thought that by taking beer wholesalers out of the equation it would be creating an environment for super competitive or for non-competitive elevated pricing. And also because there's no link between the disability on beer wholesalers and that rationale. It's as if the state passed a law that says that anyone who has a last name that begins with S is somehow disabled from distributing liquor. That may or may not have an effect on competition. We think it wouldn't have an effect on competition but even if it did, it would simply be an arbitrary or irrational way of achieving that goal. So too here, simply singling out beer wholesalers is in no way linked to any economic interest. It's simply identifying a category without explaining what it is about beer wholesalers that makes them different and that justifies the differential treatment. The only argument that the state made below about why beer wholesalers- If your view is that there's nothing special about beer wholesalers, does this mean you're willing to give up beer wholesalers' protection against termination? So I was going to say, Judge Easterbrook, that the only rationale that the state offered below was this rationale concerning the franchise- I understand why you would want to answer my question that way but my actual question was if there's nothing special about beer wholesalers, are you willing to give up the fact that beer wholesalers have a protection against termination that liquor and wine wholesalers do not? Well, there may be something special about beer wholesalers that has nothing to do with this provision. And I think that if I were here defending the validity of franchise protections- That's what I'm asking you to defend against your own argument that there's nothing special about beer wholesalers. So if I were tomorrow appointed as General Fisher's successor and was here defending the validity of the franchise protections, what I would say is that those franchise protections served a very different purpose and a purpose that would survive rational basis review. But it has nothing to do with this case. That purpose was in order to protect beer wholesalers against essentially predatory behavior by beer producers. And they were adopted not only in Indiana but nationwide for precisely that reason, namely because what beer producers were doing was basically pushing around beer wholesalers and after beer wholesalers made considerable investments in distributing their product, they were terminating them. But again, that has nothing to do with this provision. And one reason we know that is that the franchise protections were not adopted until a generation after this prohibition was initially adopted. And of course, the rational basis standard focuses on what the legislature rationally could have thought at the time it adopted the law. Of course, this is a little bit of an unusual case because we have undisputed evidence about what the legislature actually did think. And while that evidence is not dispositive of the analysis, this court in Smith v. City of Chicago has said that it is relevant, and we certainly think that it is relevant here. This provision, again unique to the state of Indiana, was adopted out of the least legitimate of motives, namely to promote a patronage system. And quite frankly, that's the only rationale that makes sense here, and we think that that rationale is plainly an illegitimate one. And I think in terms of the rationales that have been offered, you know, I want to make sure that I cover all of them, and there's simply one other rationale that I'd like to put on the table. And that is the somewhat contrary rationale to the one that I was just discussing, this rationale of maintaining higher prices. The state in the alternative below made the argument that this was somehow a prohibition that was necessary in order to maintain competition on the wholesale tier. Now again, we think that that rationale, which is essentially a rationale that relies on the proposition that this is somehow necessary to maintain lower prices, is belied by the elimination of the prohibition would have little economic impact. But I think it also rests on the exceedingly dubious assumption that eliminating competitors is a way of promoting competition. In other words, that it is somehow necessary to maintain competition on the wholesale tier to prevent beer wholesalers and liquor wholesalers from competing against each other. And to the extent that the state suggested that this was somehow necessary in order to maintain competition on the wholesale industry, we really debunked that argument before the district court by demonstrating that, in fact, that watchdog function is primarily performed by trade associations and is primarily relevant on the retail level rather than the wholesale level. Unless there are any other questions, I see that my light is on and I'd reserve the balance of my time. Thank you, Mr. Chairman. General Fisher. Thank you, Your Honor. May it please the Court. Obviously our principal argument is the one that Judge Easterbrook was focusing on with respect to the lack of any actual classification to be at issue, and this really is a due process claim in the guise of equal protection. Indeed, to the point where, in the reply brief, Monarch comes forward and says, in fact, liquor wholesalers would have exactly the same equal protection claim if they wanted to bring it in federal court. Now, if that doesn't demonstrate the equality between the liquor and the beer wholesalers, I'm not sure what does. The whole point here is to keep the interests separate. I'm not entirely sure what Indiana thinks it is accomplishing. Suppose, oh, to take some name at random, Donald Trump wants to distribute all three kinds of liquor in Indiana. Why can't he create three separate corporations, Trump 1, Trump 2, and Trump 3, each of which holds one of the licenses? There's a prohibition on having an economic interest in each of those corporations. It goes to the level of who actually holds the economic interest. So he couldn't do that. So there's a separate prohibition on who can invest in the companies? Right. I think the ownership of the – I'm not sure what the percentages are, but it goes down to the ownership level so that you don't have a substantial interest in another company with another license. The point here, I think, is to prevent the economic aggregation of all of these interests in all types of alcohol such that the market might be manipulated. I think this is relevant to the tied house question in the sense that that is at the most obvious level about vertical integration, but it's also about market control and market power. And the concern here is that if you have wholesalers who aggregate all the interests in all the markets, they can coerce retailers into promoting products that they want to be promoted. And you eliminate a specific type of competition at the wholesale level, which is cross-product competition, the idea that you're going to maintain separate channels for liquor and separate channels for beer and see what happens and depend on the ability of those products to compete against each other to maintain some sense of orderliness in the market. So I think that these do go back to the Prohibition Era concerns, and they also pick up an avenue of support from the franchise protections that beer wholesalers enjoy. They weren't in place when this was initially adopted, but I think it would be the height of formalism to say that that can't be taken into consideration in terms of maintaining what's going on in the market right now. Is the legislature supposed to go back and reenact this law with those franchise protections in place? I don't think that that's something that the court would think is required by equal protection or due process. It's purely a formalistic exercise at that point. So I think, you know, we have put forth ample rationales for this law. There is no equal protection concern, really. This is all about trying to reach out and demand a right to distribute all kinds of alcohol within the state of Indiana. Well, that's the thrust of my presentation. If there are no further questions. Thank you, General Fischer. Since General Fischer was brief, I'll be correspondingly brief. I just want to say two things in response to the points that he's just made. The first is that General Fischer makes something, attempts to make something out of our recognition that liquor wholesalers would similarly have a claim. And of course, that is true. Liquor wholesalers would have a claim as well, potentially, but that is simply a result of the fact that Indiana has chosen to adopt what are effectively reciprocal prohibitions. From the standpoint of our client, our client's gripe is obviously that beer wholesalers are has the ability to do so, and it may very well be that liquor wholesalers would have a similar claim. As a practical matter, I think all of the relevant provisions that impose both of these disabilities would have to fall if our claim is successful, since you obviously couldn't have a disability that only runs in one direction, but that is simply a consequence of the oddity of the prohibition that Indiana has adopted. Now General Fischer today focused quite heavily on the notion that this prohibition is somehow necessary in order to avoid market concentration, in order to avoid having wholesalers who are able to distribute both beer and liquor who have market power. But I think with regard to that framing of the rationale, this is really where the availability of more direct and much more direct alternative means of achieving that goal comes into play. Obviously the Indiana antitrust laws generally would prevent the exertion of market power by wholesalers with regard to retailers, but Indiana did not stop there. As we point out in our brief, Indiana has adopted a variety of specific provisions in the context of alcohol distribution to address precisely that concern, most notably the prohibition against the tying of products and the prohibition against exclusivity arrangements between wholesalers and retailers. And finally, on the point concerning franchise protections, I think the last thing I would say is to pick up on something that I discussed earlier with Judge Easterbrook. The franchise protections simply do not give beer wholesalers a leg up. Instead, they simply protect beer wholesalers against predatory behavior by beer producers. And the best evidence of that is the fact that beer wholesalers, like liquor wholesalers, are able to distribute wine, and there is no evidence, and indeed there is unrebutted evidence to the contrary, that beer wholesalers have not been able to establish a market advantage, notwithstanding the existence of the franchise protections. Thank you, Your Honors, and we would ask that the judgment of the district court be reversed. All right. Thanks to all counsel. The case is taken under advisement.